### MARTIN v. STATE.

### (Nashville.   December Term, 1903.)

1. **SALOON.** Unlawful to keep open, or do any business therein on Sunday, except in case of emergency.

   The owner of a saloon, except in case of an emergency, cannot keep it open on Sunday, or engage in any work pertaining to the business thereof, or allow others to do so; therefore, where a barkeeper, in the performance of his usual duties, entered the saloon on Sunday, for the purpose of icing the beer, by replenishing the refrigerator, and admitted the porter to carry away the slops, he was properly convicted under the statute forbidding any person to "keep open on Sunday any place where liquors are sold or dispensed," in the absence of proof that a quantity of ice sufficient to preserve the beer could not have been placed in the refrigerator before the saloon closed Saturday night.

   Code cited and construed:   Sec. 6784 (S.); sec. 5671 (M. & V.); sec. 4861 (T. & S. and 1858).

   Cases cited and approved:   McKinney v. Nashville, 96 Tenn., 79; Newbern v. McCann, 105 Tenn., 166.

---

### FROM DAVIDSON.

---

Appeal in error from the Criminal Court of Davidson County.—W. M. HART, Judge.

Martin v. State.

JAMES A. RYAN, for Martin.

ATTORNEY-GENERAL CATES, for the State.

---

MR. JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error was indicted for keeping open his employer's saloon on Sunday. He was convicted, and sentenced to pay a fine of $25 and the costs of the cause. He has appealed in error to this court.

The facts shown by the record are as follows:

Plaintiff in error was a bartender for Charles Geiger, the owner of a saloon on Church street, in the city of Nashville. On Sunday, the first day of November, 1903, about 9 o'clock in the morning, the plaintiff in error was found in the saloon of his employer by an officer, who went there for the purpose of investigating a rumor he had heard as to the house being kept open on Sunday. While the officer was standing on the outside, he saw a negro man walk to the front door and rap twice upon it. He stepped around behind the negro, and heard the key rattle in the door; and, when it opened, the negro went in, and the officer went in immediately behind him. Then he saw Mr. Martin with his coat off, and discovered that he was the man who unlocked the door. The negro was allowed to come in for the purpose of taking up the slops, and Mr. Martin was there for the purpose of receiving the negro, who was the porter, into the house, and also for the purpose of putting ice upon the beer. This icing of the beer was a

part of his business.    He was also there for the purpose
of turning off the lights, which had been on during the
whole of Saturday night.    There was no especial emer-
gency that prompted the action of Mr. Martin in going
into the saloon on Sunday.    He went there in pursuit
of a portion of his regular employment, in icing the beer.
It is not shown, however, that there had been placed a
sufficient quantity of ice in the refrigerators the night
before to thoroughly preserve the beer until the follow-
ing Monday morning.    It is shown that the refriger-
ators were filled in the evening, and at 12 o'clock at
night about half the ice had melted.    It is not shown
that a sufficient quantity of ice might not have been laid
in the evening before, and the refrigerators replenished
before closing out business Saturday night; that is, a
quantity sufficient to preserve the beer.

The statute on which the indictment was based, so far
as necessary to be quoted, is as follows:

"No licensed grocer or other person in this State shall
retail any malt, vinous, fermented, spirituous, or other
intoxicating liquors on Sunday, or keep open on Sunday
any place where such liquors are sold or dispensed."
Shannon's Code, sec. 6784.

There were numerous assignments of error filed in
this court by the plaintiff in error, but the substance of
them all may be considered in determining whether the
facts above set out make a case of keeping open a saloon
on Sunday, in the sense of the statute.

The statute has been construed with great stringency,

for the reason that it is exceedingly difficult to detect violations of the liquor laws in respect of the surreptitious sales of intoxicating beverages. In *McKinney* v. *Nashville,* 96 Tenn., 79, 33 S. W., 724, it was held that the presence behind the bar of a saloonkeeper and his bartender early Sunday morning constituted a viola- tion of a municipal ordinance containing substantially the same language as that of the statute quoted above, although they were merely engaged in winding up their week's work. In speaking to this point, after deciding the matter as above stated, the court said: "We do not hold that the proprietor or employees or family may not enter the saloon, as proper occasion may demand, on the Sabbath; but they cannot, under this ordinance, engage in the work pertaining to their saloon, or allow others to enter it or remain in it." In *Newbern* v. *McCann,* 105 Tenn., 166, 58 S. W., 115, 50 L. R. A., 476, in defining the right to enter the saloon on Sunday, the following language is used: "There are many occasions when a keeper of a saloon may enter it on Sunday from necessity or upon an emergency, as to guard against fire or burglary, or to protect his house from damage as the results of rains or storms, or his goods from loss from sudden leakage, and many other matters which present cases of emergency and necessity."

The question presented for decision is whether the facts above stated make out such a case of emergency or necessity. This question must be answered in the negative. The act of the barkeeper was merely a part

Martin v. State.

of his usual business, in supplying the beer with ice; likewise his admitting the porter for the purpose of carrying out slops.      We do not pass upon the question whether he could, without a violation of the statute, have gone into the saloon merely for the purpose of turning off the lights.      This act, being connected with others in violation of the statute, cannot be considered as a separate matter.

It results that there is no error in the action of the court below, and it must be affirmed.